JOHN HAYES, guardian, *vs.* HARMONY GROVE CEMETERY.

In 1863 J. S. died seised of land which he devised to his wife. The will was proved, but no executor or administrator appointed. The wife married again, and in 1869 died intestate, leaving as her only heirs the children of the former marriage. Their duly licensed guardian sold the land by public auction in October 1870, payment to be made one half in cash and the other half to remain secured by a mortgage on the land. The purchaser, on examining the title, objected that neither the estate of J. S., nor his wife's estate, had been administered upon, whereupon the guardian in December 1870 took letters of administration on the wife's estate, and in January 1871 on the estate of J. S., and in February 1871 tendered a deed of the land to the purchaser, and demanded performance of his contract, which he refused. *Held,* upon a bill in equity then filed by the guardian against the purchaser to enforce the contract, that the possibility of debts against the estate of J. S., or his wife's estate, in the absence of any affirmative evidence thereof, was not a cloud on the title, which should debar the plaintiff from a decree for specific performance, protecting the defendant by not requiring him to give a negotiable note for the half of the contract price which was to remain for a reasonable time secured by mortgage.

BILL IN EQUITY filed February 15, 1871, by the guardian of the minor children of John and Mary Hogan, to enforce specific performance of the defendants' contract of purchase of a parcel of land in Salem, sold by public auction on October 12, 1870, in pursuance of a license of the probate court. The defendants answered that the plaintiff was unable to give a good title to the land; and he filed a general replication. Hearing before *Morton,* J., who made the following report thereof:

" The case came on for hearing upon bill, answer, replication and testimony. The plaintiff was duly appointed guardian of the minors named in the bill, and duly licensed to sell their real estate; and he duly advertised the same, and the sale was in all respects regular and legal. The defendant corporation authorized Jonathan F. Carlton to attend the auction, and bid off and buy the land for the defendants; and Carlton attended, and bid off the land, and the auctioneer duly signed a memorandum of the sale, and of the terms of the sale, as the agent of both parties," a copy of which was made part of the report, and showed that the amount of Carlton's bid was $3575, and the terms of purchase were " one half of the purchase money cash in one week, and the balance can remain secured by a mortgage of the premises at seven per cent."

" This sale was made October 12, 1870. It appeared that John Hogan, the father of said minors, owned the land ; and no question was made as to his title. Said Hogan died in November 1863, having made a will by which he gave the land to his wife, Mary Hogan, the mother of these minors, and nominated her as executrix. She duly presented the will to the probate court, and it was duly proved, allowed and recorded as his last will, but she did not give any bond, and was not appointed executrix of the will, nor was any other person appointed to administer upon his estate under the will.

" It further appeared that Mary Hogan was married again to John Welch, and died in November 1869, leaving these minors, the children of her first husband ; and that she had no child by Welch, but that these children were her only heirs, and this land descended to them.

" The defendants, in October 1870, after the auction sale, proceeded to examine the title of these minors to the land, and objected that administration had not been taken out upon the estate of their mother ; and thereupon, in December 1870, the plaintiff was duly appointed administrator of said Mary Welch, and gave notice of his appointment. The defendants also objected that administration of the estate of their father had not been taken ; and thereupon, in January 1871, the plaintiff was duly appointed administrator with the will annexed of said John Hogan, and gave due notice of said appointment. On February 10, 1871, the defendants refused to take the land ; and on February 13, 1871, the plaintiff duly tendered a deed of the land to them and demanded a performance of their contract, which tender and demand they declined. The judge finds that the defendants declined to take the deed on the ground that there was a cloud on the title ; and as a fact, that the plaintiff used due diligence, and that said tender and demand were made within a reasonable time under the circumstances. There was no evidence on the question whether there were any debts due or owing from either John Hogan or Mary Welch.

" The question reserved for the full court is, whether the probability or possibility of debts against said estate, there being no

affirmative evidence of any debts, is such a defect or cloud upon the title that a specific performance of the contract would not be decreed by this court in this cause. The court may dismiss the bill; or the case may be sent to a master to determine and report whether there are any debts; or a decree for specific performance may be entered; as the court shall determine."

*W. C. Endicott,* (*J. W. Perry* with him,) for the plaintiff.

*J. C. Perkins,* for the defendants.

CHAPMAN, C. J. The plaintiff, being the guardian of the minors named in the bill, was duly authorized to sell the real estate in question at auction, and proceeded regularly in making the sale. The defendants, by their agent, bid it off; and are bound to the specific performance of their contract, unless there is some defect in the title.

The general rule is, that, in order to maintain a bill for specific performance, the plaintiff must prove that the title is good beyond a reasonable doubt. *Richmond* v. *Gray,* 3 Allen, 25. *Sturtevant* v. *Jaques,* 14 Allen, 523. The subject is fully discussed in Sugd. Vend. (14th ed.) *c.* 10, § 3, and the principal authorities are there cited. The general rule in England is as stated above; but it has also been held that mere possibility or suspicion of defect is not sufficient to release the vendee. See *Lowes* v. *Lush,* 14 Ves. 547; *Franklin* v. *Brownlow,* Ib. 550; *Pyrke* v. *Waddingham,* 10 Hare, 1.

Questions may arise in respect to the title, which must depend upon circumstantial evidence; as for example, questions of legitimacy; and after such questions are settled beyond a reasonable doubt, there is still a possibility of a defect. Yet this possibility is disregarded. Sometimes the court will presume the surrender of a term, or the discharge of a mortgage, in favor of the validity of a title. *Emery* v. *Grocock,* Mad. & Geld. 54. *Cooke* v. *Soltau,* 2 Sim. & Stu. 154.

In this case, there is no question as to the validity of John Hogan's title. He died seised, in November 1863, leaving a will by which he devised the land to his wife; and this will was proved. She died seised, in 1869, leaving these minors as the only heirs of herself and their father. Their present title is

Hayes *v.* Harmony Grove Cemetery.

therefore good. But nothing was done under John Hogan's will; nor was any administration taken of his estate till after it was objected by the defendants that, if there should be debts against him, this land might be responsible for their payment. Therefore the plaintiff, in January 1871, took out administration on his estate, and gave the proper notice, so that this possibility will be extinguished by the statute of limitations in January 1873, unless enforced prior to that time. Nor was any administration taken upon the estate of his widow, till December 1870. Notice was then given, which will extinguish the possibility of loss from her debts, not previously enforced, in December 1872. Whatever assets the plaintiff may receive from the defendants, he must apply to the payment of such debts, if any exist against either the father or the mother. But there is no evidence tending to raise even a suspicion that any debts exist against the estate of either the father or the mother: and therefore there is only a possibility of loss on that ground.

It is suggested, moreover, by the plaintiff, that, as half of the purchase money is, by the terms of the sale, to be secured by mortgage, which is to remain unpaid for a reasonable time, the defendants will have ample security in their hands to protect them against this possibility. As we do not think there is any reasonable doubt about the title, under all the circumstances stated in the report, we think this suggestion of the plaintiff points out an ample security against all possible loss. By giving a note not negotiable, the defendants may compel the holder of the note and mortgage to apply upon it any money that they may be held to pay for any debts that may possibly be chargeable upon the estate.

*Decree for the plaintiff; the defendants not to be required to give a negotiable note for the balance which is to be secured by mortgage.*