**In re Dean HESTER and Brenda Hester, Debtors.**

**Larry STEWART, Trustee, Plaintiff,**

v.

**Dean HESTER and wife, Brenda Hester, and W. P. Roland and wife, Rachel Roland, Defendants.**

**Bankruptcy No. 381–00401.**
**Adv. No. 381–0217.**

United States Bankruptcy Court,
M. D. Tennessee.

Sept. 29, 1981.

Charles C. Morrow, Nashville, Tenn., for plaintiff.

Charles N. Griffith, Waverly, Tenn., for defendants.

MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This matter is before the court on a complaint by the trustee seeking to avoid a

transfer by the debtors of a certain tract of real property pursuant to the fraudulent transfer provision of 11 U.S.C. § 548. The pertinent facts are undisputed.

In December 1971 fee simple title to the property was conveyed to the debtors by warranty deed which purported to restrict the debtors' right of alienation by making the conveyance expressly

> subject to the condition that if the grantees herein attempt to convey, mortgage, or otherwise encumber the hereinafter described property during our lives, the grantors shall have a right of re-entry.

The grantors were the defendants, W. P. Roland and wife, Rachel Roland, the mother of the debtor, Dean Hester. They imposed the restriction on alienation to protect the debtors, whom they considered to be poor managers of their financial affairs, and to ensure that no one other than the debtors lived on the property during their lifetimes.

In December 1975 the debtors executed a deed of trust on the property securing a debt to a local bank. The Rolands were not informed of this encumbrance.

In the fall of 1980 the Hesters advised the Rolands that their financial situation was such that it would be necessary for them to file a bankruptcy petition. At the request of the Rolands the property was conveyed back to them by warranty deed dated December 8, 1980. The debtors filed their bankruptcy petition on February 9, 1981.

The debtors have resided on the property continuously since the late 1960's and continue to do so. During the interval between the two deeds, they made certain improvements to the property, adding a den, patio and brick veneer to a portion of the residence.

■ Since no consideration was paid by the Rolands for the 1980 conveyance, the trustee is entitled to have it avoided under 11 U.S.C. § 548(a)(2). The Hesters were insolvent on that date or became so as a result of this transfer. The defendants argue that the Rolands were entitled to have the property conveyed back to them pursuant to the right of re-entry retained in the 1971 deed. That argument, however, is without merit. Conditions subsequent preventing alienation of fee simple title are void. A discussion of the origin of this rule appears in §§ 13, *et seq.*, of Gray, Restraints on Alienation of Property (2d ed. 1895). The author of that venerable treatise concludes that this rule was adopted for public policy reasons and that its validity is "now past dispute." *Id.* § 13 at 8 and § 21 at 11. In simple but effective prose that author stated almost a century ago:

> As in England, so in America, a condition, or a conditional limitation, restraining an owner in fee simple from selling his land, is bad.

*Id.,* § 23 at 14.

The Tennessee courts have long recognized this rule. The following passage from the case of *Keeling v. Keeling,* 203 S.W.2d 601 (Tenn.1947), is particularly pertinent to this proceeding:

> We can find no exception to the rule that conditions subsequent preventing alienation of an estate in fee, even for a limited time, are universally held void as inconsistent with the incidents and nature of the estate devised and contrary to public policy.

*Id.* at 603 [citations omitted]. A more recent discussion of the rule appears in *Hankins v. Matthews,* 425 S.W.2d 608 (Tenn.1968).

It is readily apparent that the broad prohibition against alienation in the 1971 warranty deed to the debtors is void and the Rolands did not retain thereby any right of re-entry or other interest in the property.

■ In their post-trial memorandum brief the defendants argue that, since only nominal consideration was paid by the Hesters for the 1971 deed, its effect was to create a spendthrift trust. Regardless of what may have been the intention of the defendants at the time, they failed to create such a trust. In order to have done so, it would have been necessary that a trust have been expressly created and title to the

property conveyed to a trustee. The Tennessee Supreme Court has addressed this very issue and declined to give effect to an alleged spendthrift trust where title to the alleged trust res was vested in the alleged beneficiary. That court noted pertinently:

> We find it unnecessary to pursue the subject further. Counsel cite us to no decision applying the "spendthrift" doctrine to a case on its facts like that before us, and holding that the mere incorporation of words of restriction of the power of alienation in a devise of an estate for life operate to create a spendthrift trust, —and we know of none. While this Court is now fully committed to the recognition of the "spendthrift trust" doctrine . . ., the doctrine will not be extended to apply when the instrument creating the property rights fails to (1) create a "trust" in unmistakable terms, and (2) provide for a trustee. Lacking these elements we will not hold that property may be "so fenced around by inhibitions and restrictions and to secure to it the inconsistent characteristic of right and enjoyment to the beneficiary and immunity from his creditors", to use the vigorous language of an early writer.

*Sternberger v. Glenn,* 137 S.W.2d 269, 271–272 (Tenn.1940).

An appropriate order will be entered setting aside the conveyance of September 8, 1980, and vesting fee simple title to the property in the trustee free of the restraints imposed by the above-quoted language in the 1971 warranty deed.